# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

| | |
|---|---|
| United States of America, | Crim. No. 13-273 (SRN/JJK) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION ON SEARCH AND SEIZURE** |
| (8) Elias Karkalas, | |
| Defendant. | |

---

Linda I. Marks, Esq., and Roger J. Gural, Esq., United States Department of Justice, for Plaintiff; and

Daniel L. Gerdts, Esq., and John C. Brink, Esq., for Defendant Elias Karkalas.

_____

BECKY R. THORSON, United States Magistrate Judge.

Defendant Elias Karkalas has been indicted for violations of the Controlled Substances Act, Federal Food, Drug, and Cosmetic Act, for mail and wire fraud, and for international money laundering. (Doc. No. 5.) Karkalas moves to suppress all evidence obtained by execution of a Search and Seizure Warrant dated June 6, 2013. (*See* Doc. No. 419, Hrg. Ex.1)[1]; *see also* Doc. No. 350, Def. Elias Karkalas's Mot. to Suppress all

---

[1]  At the December 8, 2015 hearing, counsel for Karkalas sought only a four-corners review. (Doc. No. 422, Tr. at 27.) Hearing Exhibit 1 was submitted at the hearing by the Government with no objection by Defendant Karkalas. (*Id*. at 29.) The Exhibit includes the Application for a Search Warrant, the Affidavit of Kimberly S. Brill, the Search and Seizure Warrant with an attached list of Items to Be Seized, and a blank return page. The Exhibit was produced in discovery and is bates numbered 0:13-cr-273_00113766-00113789.

Evid. Obtained from Unlawful Searches and Seizures.) This matter came on for hearing before United States Magistrate Judge Jeffrey J. Keyes on December 8, 2015. (Doc. No. 418.) Because Magistrate Judge Keyes had signed the search warrant at issue, he referred this motion to the undersigned United States Magistrate Judge Becky R. Thorson for a four-corners review and a Report and Recommendation to the District Court. As set forth below, this Court recommends that Karkalas's suppression motion be denied.

## THE WARRANT DOCUMENTS

On June 6, 2013, Magistrate Judge Jeffrey J. Keyes issued a search and seizure warrant authorizing a search of a specifically identified AOL email account located at the offices of AOL, Inc. in Dulles, Virginia. (Doc. No. 419, Hrg. Ex. 1.) The search warrant was directed to email address [kdreakster@aol.com](mailto:kdreakster@aol.com) and/or account holder Elias Karkalas. (*Id*.) The account holder, Elias Karkalas, is one of the Defendants in this action. The search warrant was issued on the basis of probable cause evidence asserted in the Affidavit of Drug Enforcement Administration ("DEA") Diversion Investigator Kimberly S. Brill. (*Id*. at 0:13-cr-273_00113768-86.)

### The Application for a Search Warrant

The application for a search warrant listed the specific AOL account, the AOL address, and referenced an attached Affidavit and list of items to be seized. (*Id*. at 0:13-cr-273_00113766.) The narrative of the supporting affidavit provided an overview of Investigator Brill's background and experience investigating drug investigations involving the use of the Internet. (*Id*. at 0:13-cr-273_00113768.) Separate sections on Internet terminology, Federal and State Drug Laws and Regulations, and a Background

on AOL E-Mail and Electronic File Storage Services followed. (*Id*. at 0:13-cr-273_00113768-77.) The affidavit added an overview on Electronic Communications Access Statutes. (*Id*. at 0:13-cr-273_00113778-79.)

     A detailed Search Procedure was also provided in the affidavit: "[t]o ensure that only those accounts/files described in this affidavit are searched and to minimize any disruption of computer service to innocent third parties, it is requested that employees of AOL be permitted to assist investigators in the execution of this warrant using the following procedures." (*Id*. at 0:13-cr-273_00113779.) The procedure listed steps "a" through "e." (*Id*. at 0:13-cr-273_00113779-80.) First, the email records for the Defendant's email account at AOL would be isolated. Next, an exact duplicate would be created. After that, the duplicate would be provided to the investigator serving the search warrant. Law enforcement personnel would "thereafter review the information stored in the accounts and files received from AOL employees and then identify and copy the information contained in those accounts and files which are authorized to be further copied by [the] search warrant." (*Id*. at 0:13-cr-273_00113780.) As the last step in the process, law enforcement would "then seal the original duplicate of the accounts and files received from AOL employees and will not further review the original duplicate absent an order of the Court." (*Id*.)

     In addition, the affidavit included a section subtitled, "Information to be Searched and Things to be Seized." (*Id*.) This section of the affidavit was divided into two subsections, labeled "39.a" and "39.b" (hereinafter "Subsection a" and "Subsection b"). Subsection a described the information to be initially collected from AOL. This list is

3

identical to the list attached to the application and search warrant. (*Compare id.* at 0:13-cr-273_00113780-81 *with* 0:13-cr-273_00113788.) Subsection a states:

> a. From the date of account opening to the present, for e-mail address [kdreakster@aol.com](mailto:kdreakster@aol.com) and/or account holder Elias Karkalas:
>
>    1. All electronic mail or communications, including trash, sent, and draft folders, sent to, from, or through, stored and presently contained in, or on the behalf of, the electronic mail address, or associated with the login name and/or account holder name;
>
>    2. All services associated with the account, including electronic files or other data stored pursuant to electronic file storage/hosting services available to subscribers;
>
>    3. All existing printouts from original storage of all of the electronic mail described above;
>
>    4. All content and transactional information for all activity of the electronic mail address, subscriber login name, electronic file storage service, and/or individual account described above, including log files, dates, times, methods of connecting, ports, dial-ups, and/or locations;
>
>    5. All business records and subscriber information, in any form kept, pertaining to the electronic mail address, electronic file storage service, login name, and/or individual accounts described above, including applications, subscribers' full names, all screen names associated with the subscribers and/or accounts, all account names associated with the subscribers, telephone numbers, addresses, passwords, and detailed billing records;
>
>    6. All "contact lists" and "address lists" stored and presently contained in, or on behalf of the electronic mail address, login name, or account holder name.

(*Id.* at 0:13-cr-273_00113780-81.)

Subsection b of the affidavit instructed government-authorized persons on how to conduct their review of the information provided above from AOL and outlined a narrow list of information to be captured upon the later review:

Upon receipt of the information described in subparagraph 39.a. above, government-authorized persons will review that information to locate all information described above in subparagraph 39.a that constitutes fruits, evidence and instrumentalities of violations of Title 21, United States Code, §841(a)(1) (Distribution of Controlled Substances); and/or Title 21, United States Code §331(a) (Distribution of Misbranded Drugs); and/or Title 18, United States Code, Sections 1341 and 1343 (Mail Fraud and Wire Fraud); and/or Title 18, United States Code, Sections 1956 and 1957 (Money Laundering) since approximately 2005, including, but not limited to, for each account or identifier listed in subparagraph 39.a, information pertaining to the following matters:

1. the nature, extent, location, and methods of operation of the online drug trafficking network engaged in the distribution of controlled substances and other prescription drugs, and all other illegal drug trafficking activities, headed by members of RXL and its related entities;

2. the identities, roles and locations of accomplices, aiders and abettors, co-conspirators, and participants in the illegal activities, including those not yet identified;

3. the existence and location of records tending to shed light on the organization's operations and membership;

4. the locations used in furtherance of the criminal activities, including locations used for operations and call centers of RXL and its related entities;

5. the methods of distribution and transfer of money by those involved in the offenses;

6. the location and disposition of the proceeds from the criminal activities including the illegal distribution of controlled substances, fraud, and money laundering; and

7. records relating to who created used, or communicated with the account or identifier, including records about their identities and whereabouts.

(*Id.* at 0:13-cr-273_00113781-82.)

A robust discussion of the Facts Supporting Probable Cause followed. (*Id.* at 0:13-cr-273_00113782-85.) The affidavit was subscribed and sworn to before Magistrate Judge Jeffrey J. Keyes on June 6, 2013. (*Id.* at 0:13-cr-273_00113786.)

**The Search Warrant**

The search warrant referred to the affidavit as establishing probable cause. It also referred to an attached "list of items to be seized" from AOL's offices located in the Eastern District of Virginia. (*Id.* at 0:13-cr-273_00113787.) Again, the attached list was identical to the Subsection a list described in the affidavit. (*Id.* at 0:13-cr-273_00113788.) While the affidavit with Subsection a and Subsection b's list for further review is included in the warrant documents, it is unclear—based on a four-corners review—whether it was actually attached to the search warrant document.

## ANALYSIS

Defendant Karkalas seeks to suppress the evidence searched from his AOL email account, claiming the warrant is constitutionally overbroad on its face, and that the fruits of that search and seizure should be suppressed. (Doc. No. 420, Def. Elias Karkalas's Mem. of Law in Supp. of his Mot. to Suppress Search and Seizure Evid. ("Def.'s Mem.") 1.) The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV; *see also* Fed. R. Crim. P. 41. "The manifest purpose of [the] particularity requirement [is] to prevent general searches." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). "Particularity prohibits the government from conducting general, exploratory rummaging of a person's

belongings." *United States v. Sigillito*, 759 F.3d 913, 923 (8th Cir. 2014) (quotations omitted). "The fact that [a]warrant call[s] for seizure of a broad array of items does not, in and of itself, prove that the warrant fails to meet this requirement of particularity." *United States v. Sugar*, 606 F. Supp. 1134, 1151 (S.D.N.Y. 1985).

### Probable Cause

Defendant Karkalas claims that the warrant is not supported by probable cause. The search warrant expressly references the sworn affidavit of Investigator Brill. (Doc. No. 419, Hrg. Ex. 1 at 0:13-cr-273_00113787) ("I find that the affidavit(s), or any sworn testimony, establish probable cause to search and seize the person or property.").) The DEA had been investigating Karkalas and an entity called RXL relating to an alleged online pharmacy scheme. (*Id*. at 0:13-cr-273_00113783.) Defendant Karkalas "was an RXL physician licensed to practice medicine in Pennsylvania. He authorized invalid prescriptions for seven of DEA's undercover purchases." (*Id*. at 0:13-cr-273_00113783.) Karkalas met with investigators on February 20, 2013, and discussed his Internet prescribing activities with RXL. (*Id*. at 0:13-cr-273_00113784.) He "admitted kdreakster@aol.com was the email address he used to correspond with RXL associates." (*Id*.) Karkalas "provided investigators several samples of his e-mails to RXL." (*Id*.) The Probable Cause section of the affidavit concludes with the statement: "These are not all of the facts known to me in the above-referenced investigation, but facts that I believe are sufficient to establish probable cause to believe that the e-mail account and other AOL services subscribed to in the name of Elias Karkalas with e-mail address kdreakster@aol.com are being used to commit the crimes set forth." (*Id*. at 0:13-cr-

7

273_00113785.) The affidavit includes a detailed factual section to support probable cause with a nexus between objects of the search and the location to be searched.[2]

## Criminal Rule 41 and Fourth Amendment Particularity Requirements

Various warrant documents and, in particular, the affidavit were apparently prepared to invoke the two-step process for obtaining electronically stored information as set forth in Fed. R. Crim. P. 41(e)(2)(B), which provides that a warrant may authorize seizure of electronic storage media or the seizure or copying of electronically stored information for later review of the contents consistent with the warrant. As explained above, the affidavit included a "Search Procedure" and two levels of "Information to be Searched and Things to be Seized." (Doc. No. 419, Hrg. Ex. 1 at 0:13-cr-273_00113779-82.)

As background, numerous courts have found that the two-step process set forth in Criminal Rule 41 does not violate the Fourth Amendment. *See, e.g., In the Matter of a Warrant for All Content and Other Information Associated with the Email Account xxxxxx gmail.com Maintained at the Premises Controlled by Google, Inc.,* 33 F. Supp. 3d 386, 393–94 (S.D.N.Y. 2014); *In the Matter of a Search of Information Associated with*

---

[2] Obviously relying on the AOL list (Subsection a) —and not the supplemental search list (Subsection b) —Karkalas argues that "probable cause did not support such an over-broad and limitless search" because it had no date restrictions and was not confined to dates in 2004. (Doc. No. 420, Def.'s Mem. 2.) The Government points out that it did not receive any pre-2005 information from the search warrant return and the earliest document retrieved is dated 2008. (Doc. No. 444, Gov't's Resp. 8.) Even if probable cause does not support the search warrant at issue in this case, which this Court finds that it does, suppression is not warranted because the good-faith exception as set forth in *United States v. Leon*, 468 U.S. 987 (1984) applies.

8

*[redacted]@mac.com that is Stored at Premises Controlled by Apple, Inc*., 13 F. Supp. 3d 157 (D.C.C. 2014). And the Eighth Circuit recently cited to the advisory committee's note on the 2009 amendments, acknowledging—without criticism—the two-step process under Rule 41(e)(2)(B). *See United States v. Beckmann*, 786 F.3d 672, 680 n.6 (8th Cir. 2015) ("This rule acknowledges the need for a two-step process: officers may seize or copy the entire storage medium and review it later to determine what electronically stored information falls within the scope of the warrant . . . . A substantial amount of time can be involved in the forensic imaging and review of information. This is due to the sheer size of the storage capacity of media, difficulties created by encryption and booby traps, and the workload of the computer labs.").

"The warrant must enable the searcher to reasonably ascertain and identify the things which are authorized to be seized." *United States v. Cook*, 657 F.2d 730, 733 (5th Cir. 1981) (citations omitted). "The degree of specificity required will depend on the circumstances of the case and on the type of items involved." *United States v. Summage*, 481 F.3d 1075, 1079 (8th Cir. 2007). "The particularity requirement is one of practical accuracy rather than of hypertechnicality." *Sigillito*, 759 F.3d at 923. The AOL list (Subsection a) appears to have been attached to the warrant. The searcher is AOL. According to the procedure, AOL would isolate these accounts and provide an exact duplicate and provide the exact duplicate to the investigator who served the search warrant. (Doc. No. 419, Hrg. Ex. 1 at 0:13-cr-273_0011379-80.) Law enforcement would later review the duplicate information. (*Id*. at 0:13-cr-273_0011381-82.) The second step

in the Rule 41 process "authorizes a later review of the media or information consistent with the warrant." Fed. R. Crim. P. 41(e)(2)(B).

It is possible that the Brill affidavit including Subsection b was attached and incorporated into the search warrant. If so, the search warrant would easily comply with Fed. R. Crim. P. 41 and any particularity requirements. "The Warrant Clause's particularity requirement can be satisfied by including the items to be seized in an affidavit or attachment that is adequately referenced in the search warrant." *United States v. Hamilton*, 591 F.3d 1017, 1024 (8th Cir. 2010). But in this case, it is unclear whether other documents—in addition to the one page List of Items to Be Seized—accompanied the search warrant. In other words, it is impossible to tell, in this four-corners review, whether Subsection b was originally a second page to the list of items to be seized or whether the affidavit accompanied the warrant.

Here, as was the case in *Hamilton*, "there are enough thorny issues to convince [the court] to avoid deciding the issue." *Id*. at 1027 (concluding that even if the warrant failed to meet the particularity requirement, imposition of the exclusionary rule was not supported). Accordingly, this Court need not decide whether the warrant was sufficiently particularized or whether the affidavit was adequately referenced or attached for incorporation because the good-faith exception applies.[3]

---

[3] This Court also does not determine whether the warrant, attaching the Subsection a list only, is sufficiently particularized under the unique circumstances in this case. Fed. R. Crim. P. 41(e)(2)(B) was amended in 2009. The 2009 Advisory Notes expressly state, "The amended rule does not address the *specificity of description* that the Fourth Amendment may require in a warrant for electronically stored information, leaving the
(Footnote continued on next page)

**The Good-Faith Exception Applies**

Without deciding whether the warrant's attached list (Subsection a) was sufficiently particularized or whether Subsection b of the affidavit was incorporated, this Court concludes that the evidence seized is nonetheless admissible under the good-faith exception to the exclusionary rule as articulated in *United States v. Leon*, 468 U.S. 897, 922 (1984); *see also United States v. Clay*, 646 F.3d 1124, 1127 (8th Cir. 2011) ( "[T]he exclusionary rule should not be applied so as to bar the admission of 'evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate,' even if that search warrant is later held to be invalid.") (quoting *Leon*, 468 U.S. at 900, 922–23).

"[U]nder *Leon*, "the exclusionary rule should not be applied to exclude evidence seized pursuant to a defective search warrant if the officers conducting the search acted in 'objectively reasonable reliance' on the warrant and the warrant was issued by a detached and neutral magistrate." *Massachusetts v. Sheppard*, 468 U.S. 981, 987–88 (1984). There is no evidence that the officers were dishonest or reckless in preparing the search warrant

---

(Footnote Continued from Previous Page)
application of this and other constitutional standards concerning both the seizure and the search to ongoing case law development." Fed. R. Crim. P. 41 advisory committee's note to 2009 amendment (emphasis added). Fourth Amendment analysis and the law relating to search and seizure of electronic information is evolving. Best practices for preparing warrant documents that satisfy the Fourth Amendment when the two-step process of Fed. R. Crim. P. 41(e)(2)(B) is used will undoubtedly evolve as well. *See, e.g., United States v. Lee*, No. 1:14-cr-227-TCB-2, 2015 WL 5667102 (N.D. Ga. Sept. 25, 2015) (discussing warrants that attach both the (A) items for initial seizure and the (B) items authorized to be seized upon further review).

application, affidavit, and search warrant, nor with respect to execution of the search warrant. The failure to attach Subsection b to the search warrant itself in this particular case may have been an oversight.[4] The affidavit unquestionably included both Subsections a and b and contemplated the two-step process permitted under Fed. R. Crim. P. 41(e)(2)(B).[5]

Even if it was not an oversight, "absent allegations that the [issuing judge] was not neutral, 'suppression is appropriate only if the officers were dishonest or reckless in preparing the affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.'" *United States v. Formaro*, 152 F.3d 768, 771 n.4 (8th Cir. 1998) (*quoting Leon*, 468 U.S. at 926). Indeed, the detailed affidavit establishes that the

---

[4] The Eighth Circuit has held that a clerical error in a search warrant, such as an incorrect address, is not grounds to suppress evidence seized pursuant to the warrant under the good-faith exception to the exclusionary rule. *See United States v. Thomas*, 263 F.3d 805 (8th Cir. 2001). In *Thomas*, police officers searched the defendant's apartment at 3202 South 62nd Street. The search warrant, however, authorized the search of the defendant's former address, not the apartment that was actually searched. *Id*. at 806. Although the application and supporting affidavit stated that the premises to be searched was the South 62nd Street address, the officer drafting the warrant itself forgot to update the actual warrant with the defendant's new address and instead used defendant's previous address. *Id*. at 806–07. Neither the issuing judge nor the officer noticed the incorrect address on the warrant. *Id*. The Eighth Circuit reasoned that several factors justified applying the *Leon* exception to the exclusionary rule in such a situation, including that the supporting affidavit both contained the correct address of the location to be searched and there was no evidence of bad faith on the part of the officer obtaining the warrant. *Id*. at 808.

[5] An oversight in this instance is supported by basic logic. "Normally when a section of text is subdivided, there should ordinarily be at least two subsections. A single subhead in a chapter or a single B-level subhead under an A-level subhead may be viewed as illogical and asymmetrical." *The Chicago Manual of Style* 23 (15th ed. 2003). Here, the single page list includes only Subsection a.

two-step process was intended to address the individual's right to privacy, including sealing the original duplicate received from AOL and not permitting further review absent an order from the Court. (Doc. No. 419, Hrg. Ex. 1 at 0:13-cr-273_0011379-80.) And there is no hint of a claim that the issuing magistrate judge was not neutral. Nor is there any claim that the issuing judge was deliberately misled or that there was any misconduct by agents in regard to obtaining the search warrant.

Further, the search warrant contains an express reference to the affidavit for probable cause purposes. Accordingly, there was not a wholesale failure to reference the affidavit. The affidavit was reviewed by the magistrate judge when the application was presented, and the application for search warrant, the search warrant, and affidavit were all signed by the magistrate judge, demonstrating the judge's approval of the search warrant with reference to the affidavit and his awareness of the scope of the intended search. *Hamilton*, 591 F.3d at 1028. Significantly, the affidavit included a clear process for the two-level search-and-seizure process permitted by Fed. R. Crim. P. 41:

> 38. To ensure that only those accounts/files described in this affidavit are searched and to minimize any disruption of computer service to innocent third parties, it is requested that employees of AOL be permitted to assist investigators in the execution of this warrant using the following procedures:
>
> a. The search warrant will be presented to AOL personnel who will be directed to isolate those accounts and files;
>
> b. AOL employees (with or without law enforcement personnel) trained in the operation of computers will create an exact duplicate of the computer accounts and files described, including an exact duplicate of all content stored in the computer accounts and files;

13

    c. AOL employees will provide the exact duplicate in electronic form of the account and files and all content stored in those accounts and files to the investigator who serves this search warrant;

    d. Law enforcement personal will thereafter review the information stored in the accounts and files received from AOL employees and then identify and copy the information contained in those accounts and files which are authorized to be further copied by this search warrant; and

    e. Law enforcement personnel will then seal the original duplicate of the accounts and files received from AOL employees and will not further review the original duplicate absent an order of the Court.

(Doc. No. 419, Hrg. Ex. 1 at 0:13-cr-273_0011379-80.) The totality of the circumstances shows that the search warrant and execution methods were intended to properly comply with the requirements of the Fourth Amendment and Rule 41 procedures.

    Under these circumstances it was objectively reasonable for agents to rely on the warrant. *See Hamilton*, 591 F.3d at 1029. Agents executed the warrant in this case with a good-faith belief that their review of information obtained from AOL was authorized under the warrant and there is no deliberate, reckless, or grossly negligent conduct to be deterred by application of the exclusionary rule.

## **CONCLUSION**

    The search warrant was issued on June 6, 2013, and was based upon sufficient probable cause as stated in the Affidavit of DEA Diversion Investigator Kimberly S. Brill and as determined by Magistrate Judge Jeffrey J. Keyes. Without deciding whether the warrant was sufficiently particularized or whether Subsection b was incorporated to satisfy the particularity requirement, this Court concludes that evidence seized is nonetheless admissible under the good-faith exception to the exclusionary rule.

## RECOMMENDATION

Based on the foregoing Findings and Conclusions, it is **HEREBY**

**RECOMMENDED** that Defendant Elias Karkalas's Motion to Suppress All Evidence Obtained from Unlawful Searches and Seizures (Doc. No. 350) be **DENIED**.

| | |
|---|---|
| Dated: February 1, 2016 | *s/ Becky R. Thorson* |
| | Becky R. Thorson |
| | United States Magistrate Judge |

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:**  This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.